**F I L E D**
CLERK, U.S. DISTRICT COURT

6/4/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ KM _____ DEPUTY

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
JENA A. MACCABE (Cal. Bar No. 316637)
Assistant United States Attorney
Deputy Chief, Major Crimes Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5046
     Facsimile: (213) 894-0141
     E-mail:    jena.maccabe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>         v.<br><br>MICHAEL ANGEL ALVAREZ,<br>  aka "Diablo,"<br><br>         Defendant. | No. 2:26-mj-03156-DUTY<br><br>GOVERNMENT'S APPLICATION FOR REVIEW/RECONSIDERATION OF ORDER SETTING CONDITIONS OF RELEASE (18 U.S.C. § 3154) |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorney Jena A. MacCabe, hereby submits the government's application to (1) review the Honorable Pedro V. Castillo's order setting terms and conditions of release and (2) detain defendant MICHAEL ANGEL ALVAREZ, also known as "Diablo," in the above-entitled matter based on risk of both danger and non-appearance.

This application is based on the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 4, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney & Chief, Criminal Division

_____/s/_____
JENA A. MACCABE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

ii

**TABLE OF CONTENTS**

DESCRIPTION                                                                PAGE

I.   INTRODUCTION...............................................1

II.  ARGUMENT...................................................2

     A.   Legal Standards for Pretrial Detention................2

     B.   Defendant Should Be Detained Because He Is a Risk of
          Non-Appearance and a Danger to the Community..............2

          1.   Nature and Circumstances of the Offense..............3

          2.   Weight of the Evidence...............................5

          3.   History and Characteristics of Defendant.............6

          4.   Nature and Seriousness of the Danger Posed by
               Defendant's Release.................................9

III. CONCLUSION.................................................12

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

**Cases**

United States v. Anderson,
  177 F. Supp. 3d 458 (D.D.C. 2016) ................................. 4

United States v. Aslanian,
  No. 22-50300, 2022 WL 18046468 (9th Cir. Dec. 30, 2022) ........... 5

United States v. Barone,
  387 F. App'x 88 (2d Cir. 2010) ................................... 6

United States v. Calabrese,
  436 F. Supp. 2d 925 (N.D. Ill. 2006) ............................. 5

United States v. Ciccone,
  312 F.3d 535 (2d Cir. 2002) ...................................... 7

United States v. Colombo,
  777 F.2d 96 (2d Cir. 1985) ....................................... 7

United States v. Comberger,
  No. 5:21-MJ-05138-MAS-1, 2021 WL 1725516 (E.D. Ky. Apr. 30, 2021) . 8

United States v. Diaz-Hernandez,
  943 F.3d 1196 (9th Cir. 2019) .................................... 2

United States v. Ferranti,
  66 F.3d 540 (2d Cir. 1995) ..................................... 8, 9

United States v. Hir,
  517 F.3d 1081 (9th Cir. 2008) ................................ 10, 11

United States v. Honeyman,
  470 F.2d 473 (9th Cir. 1972) ..................................... 5

United States v. Motamedi,
  767 F.2d 1403 (9th Cir. 1985) .................................... 2

United States v. Orena,
  986 F.2d 628 (2d Cir. 1993) ...................................... 7

United States v. Prieto,
  No. 3:19-CR-142-RGJ, 2020 WL 3105414 (W.D. Ky. June 11, 2020) ..... 8

United States v. Tortora,
  922 F.2d 880 (1st Cir. 1990) .................................. 7, 11

United States v. Townsend,
  897 F.2d 989 (9th Cir. 1990) ..................................... 3

United States v. Winsor,
  785 F.2d 755 (9th Cir. 1986) ....................................... 2

United States v. Youngman,
  No. 24-1369, 2025 WL 1554929 (8th Cir. June 2, 2025) .............. 3

United States v. Zhang,
  55 F.4th 141 (2d Cir. 2022) ....................................... 5

**Statutes**

18 U.S.C. § 924(a)(7) .............................................. 3

18 U.S.C. § 3142 ................................................ 2, 5

18 U.S.C. § 3154 ................................................... i

**Rules**

Fed. R. Crim. P. 46(e) ............................................ 10

v

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

When defendant MICHAEL ANGEL ALVAREZ, also known as "Diablo," ("defendant") was 15 years old, he intentionally shot and killed a victim on behalf of the 18th Street gang.  He was sentenced to 50 years to life for that murder.  While in prison, he feloniously possessed a weapon, for which he was sentenced to two years' probation upon his release on the murder conviction.  He had served a total of approximately 24 years before his release.

Unmoved by his new chance at life, defendant promptly accepted a leadership role over 18th Street, which he believed had fallen into disarray while he was gone.  He put on the mask of a "Peace Ambassador" for the City of Los Angeles, too, as he promised to help bring peace to MacArthur Park for approximately $60,000 per year.  Rather than peace, defendant brought more violence on behalf of 18th Street.  He also illegally possessed two body armor plates, despite his violent felony prohibiting him from possessing body armor under federal law.

Defendant should be detained pending trial.  As he has consistently failed to comply with supervision, the pending release conditions will not reasonably assure his appearance in this case or the safety of the community.  Pretrial Services, which would be charged with supervising defendant, believes there are no conditions or combination of conditions it could use to mitigate the real danger concerns in this case.  The government could not agree more.

## II.   ARGUMENT

### A.   Legal Standards for Pretrial Detention

A defendant must be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is thus appropriate for a defendant who is either a danger to the community or a risk of non-appearance.  United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985).

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)."  United States v. Diaz-Hernandez, 943 F.3d 1196, 1199 (9th Cir. 2019).  Those factors are:

> (1)   the nature and seriousness of the offense charged, including whether the offense is a crime of violence;
>
> (2)   the weight of the evidence against the defendant;
>
> (3)   the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and
>
> (4)   the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.

United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986) (per curiam).  Consideration of non-statutory factors is disfavored. Diaz-Hernandez, 943 F.3d at 1199.

### B.   Defendant Should Be Detained Because He Is a Risk of Non-Appearance and a Danger to the Community

The current charge against defendant, the damning evidence against him, his dangerous history and characteristics, and the risk

2

to the community if he were to be released all support his detention pending trial.

1.   Nature and Circumstances of the Offense

The nature and circumstances of defendant's offense weigh in favor of detention, especially in light of the other factors this Court must consider.

In a recent appeal where a convicted murderer, like defendant, possessed body armor and firearms on parole, the Ninth Circuit affirmed the district court's pretrial detention order on danger and non-appearance grounds.  See United States v. Romero, Case 25-1738, Dkt. 10 (March 28, 2025).  In another recent appeal, the Eighth Circuit affirmed a district court's refusal to reduce a 27-month sentence for a body-armor-possession conviction.  See United States v. Youngman, No. 24-1369, 2025 WL 1554929 (8th Cir. June 2, 2025).

The fact that defendant's Guidelines range is currently 10 to 16 months' imprisonment (without acceptance of responsibility) does not make this an insignificant crime.[1]  It is a felony offense with a statutory maximum of three years' imprisonment.  See 18 U.S.C. § 924(a)(7).  And the fact that defendant committed it while serving a probationary term for a weapons offense, after serving 24 years for

_____

[1] As the government explained in the continued detention hearing, the government is ready to proceed to trial on the first trial date that is set in this case if defendant wishes, alleviating any concern of over serving.  Also, given the discussion in the complaint of other offenses defendant has talked about and the warrant to search his phones, defendant knows that he is under investigation for crimes that carry great sentencing exposure, increasing his incentive not to appear in court.  Cf. United States v. Townsend, 897 F.2d 989, 994-95 (9th Cir. 1990) (explaining that "[f]acing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight" and noting that electronic monitoring cannot assure prevention of non-appearance).

3

murder, is aggravating.  So is the fact that defendant possessed this body armor soon after being stabbed and within months of having his rivals "smashed out"/assaulted.  (Compl. ¶¶ 11, 19(c).)  This is not a case where a defendant simply forgot about body armor left in his residence years earlier.  Defendant here had two plates of body armor with him in his car, which defense counsel stated at the detention hearing he sometimes sleeps in, that he fully knew about and that were manufactured only in December 2025.  (Id. ¶¶ 17-18, 20); see United States v. Anderson, 177 F. Supp. 3d 458, 465 (D.D.C. 2016) ("The first factor, the nature and circumstances of the charged offense, favors detention.  The grand jury found probable cause to believe that Defendant unlawfully possessed body armor after being convicted of a felony crime of violence.  Standing alone, such a charge may not typically justify a defendant's pretrial incarceration.  Yet the circumstances of Defendant's offense are far more troubling.  Here, the body armor was not found in Defendant's closet.  Rather, it was found on his person after he was plainly involved in a gunfight in a parking lot in front of a residential apartment building.  Defendant's use of body armor in this case clearly posed a significant danger to lives in the community.").

Defendant's minimization of the body armor as mere plates, rather than vests, does not mean that defendant could not use the plates for protection from gunfire even without inserting the plates into a vest.  Nor does it mean he lacked a vest for the plates elsewhere.  The statute criminalizes the possession of body armor, like these plates, not just vests.

In sum, the nature and circumstances of defendant's offense, as currently charged, support detention.

4

### 2.    Weight of the Evidence[2]

The evidence that defendant committed the charged offense is overwhelming and cannot be ignored in assessing defendant's risk of danger and non-appearance in this case. See, e.g., United States v. Aslanian, No. 22-50300, 2022 WL 18046468, at *1 (9th Cir. Dec. 30, 2022) ("Given the nature of the crime and the **strength of the government's case**, we find that the government has met its burden of showing, by clear and convincing evidence, that 'no condition or combination of conditions will reasonably assure . . . the safety of . . . the community.'" (emphasis added)).

Defendant openly admitted to possessing the body armor he is charged with possessing.  (Compl. ¶¶ 18, 19(e).)  He further admitted to the murder conviction, which is documented in a certified conviction record with express jury findings, that precluded him from possessing any body armor.  (Id. ¶¶ 18, 21-22.)  He also admitted not only to being an 18th Street gang member but also to being "the guy"

_____

[2] Nothing in the text endorses assigning relative weights to the statutory factors, 18 U.S.C. § 3142(g), and this Court should not do so.  The statement that the strength of the evidence is deserving of the "least weight" originated with United States v. Honeyman, 470 F.2d 473, 474 (9th Cir. 1972), but only in the context of applying the factors to that specific case.  While one factor might outweigh others in a particular case, it is inappropriate to treat one factor as categorically less important.  See United States v. Zhang, 55 F.4th 141, 149 (2d Cir. 2022) ("[T]he weight given to each factor will inevitably vary from case to case.").  Indeed, various courts have questions and criticized the creation of a hierarchy of factors. See, e.g., United States v. Calabrese, 436 F. Supp. 2d 925, 927 (N.D. Ill. 2006) (finding that "[s]ubsequent Ninth Circuit opinions seized on [one case's] language but without discussing the justification for favoring one," "[t]he statute does not instruct that one or another factor is less important," "it is difficult to see how this factor could always be less important than the others," "were there very strong evidence that a defendant was a serial rapist or killer, this factor alone might outweigh all other[s]," and that the principle is an "off-key but well-intentioned attempt to remind us of the rule that detention is not to ordered simply because we are convinced that the accused is guilty.").

with "juice"/power over the gang.  (Id. ¶¶ 11(a), 18, 19(b), 19(d).)
On a recorded jail call, another 18th Street gang member corroborated
defendant's role, calling him the "homie" that "has the hood."  (Id.
¶ 11(b)(ii).)  On another recorded jail call, which defendant did not
care was subject to law enforcement monitoring, defendant boasted
about personally "super mark[ing] out" (i.e., disciplining) a fellow
18th Streeter and told his friend that he should have been there.
(Id. ¶ 11(b)(i).)

The evidence conclusively shows defendant's guilt of the current
charge and of leading a violent street gang, while claiming to be a
gang interventionist for the City.  See United States v. Barone, 387
F. App'x 88, 89-90 (2d Cir. 2010) ("The fact that Barone committed
and planned violent crimes even when purportedly cooperating with
authorities signals a degree of dangerousness unlikely to be deterred
by bail release conditions.").  Accordingly, the weight of the
evidence favors defendant's detention.

3.    History and Characteristics of Defendant

Defendant's history and characteristics also favor detention.
Those include the first-degree murder that he "carried out to further
the activities of [his] criminal street gang" by "personally and
intentionally" shooting his victim dead.  (Compl. ¶ 22.)
Additionally, while serving his 50-years-to-life sentence for that
murder, defendant feloniously possessed a weapon in prison, for which
he received probation.  (Id. ¶ 15.)  During that probationary term
and despite being paid by the City to do "violence
prevention/interruption" work as a "Peace Ambassador," defendant was
arrested for "working in concert with other suspects to transport
various gambling machines from the illegal casino into the box truck"

6

and -- after escaping charges for that offense, rather than take advantage of yet another "second chance" -- continued to further the violent grip 18th Street has on the community and also possessed body armor he was prohibited from possessing.  (Id. ¶¶ 11, 14, 16, 17.)

Courts considering cases like defendant's have unanimously ruled in favor of detention.  See, e.g., United States v. Tortora, 922 F.2d 880, 885 & n.6 (1st Cir. 1990) (detaining on danger, reversing district court's release order, noting defendant's "total commitment to a life of crime," quoting defendant's threats to kill, and finding his association with organized crime and "devotion to the Mafia" a "highly relevant" consideration to detention).  The Tortora court detained the defendant, who "made the Mafia his highest priority in life and pledged fealty to its needs, whatever the circumstances." Id. at 885.  Defendant here, like in Tortora, "is virtually a paradigm of the criminal who, within the contemplation of the Bail Reform Act, might plausibly be subjected to pretrial detention on grounds of dangerousness."  Id. at 886.  Defendants are regularly detained on danger grounds for "readily further[ing]" organized crime's "criminal objectives through violence," which appropriately describes defendant here.  United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993).  Even for a defendant who did not directly participate in any crime alleged but led the criminal enterprise that carried out criminal activities at his direction, reversal of a release order is appropriate.  United States v. Colombo, 777 F.2d 96, 99 (2d Cir. 1985); see also United States v. Ciccone, 312 F.3d 535, 538, 543 (2d Cir. 2002) (also citing multiple Second Circuit cases that have "rejected as insufficient various conditions of release proposed in cases involving the pretrial detention of purported

7

leaders of organized crime families shown to be involved in violent criminal activities").

Moreover, defendant personally talked about a cooperator being "not welcome," which another 18th Streeter confirmed on a recorded jail call, said that "'we' cleaned house," explained that "a 'lot of fools' have 'gotten fucked up bad for character and they are gone and not welcome anymore,'" and claimed that an ousted gang member "needed to protect himself." (Compl. ¶ 11(b)(ii), (c).) "[T]hreats of physical harm to cooperating witnesses risk serious danger to the witnesses themselves, as well as to the community more broadly. To be plain, such conduct fundamentally endangers the integrity of the judicial process." United States v. Comberger, No. 5:21-MJ-05138-MAS-1, 2021 WL 1725516, at *5 (E.D. Ky. Apr. 30, 2021); see also United States v. Prieto, No. 3:19-CR-142-RGJ, 2020 WL 3105414, at *4 (W.D. Ky. June 11, 2020) (upholding detention on danger finding based on defendants' "own threats of violence, including threats to potential witnesses or cooperators").

In particular, given defendant's history of engaging in obstructive conduct, no condition on the bond form could prevent and detect such conduct. For example, in United States v. Ferranti, 66 F.3d 540, 543-44 (2d Cir. 1995), a case in which the defendant was charged with witness tampering, among other crimes, and where obstruction remained an ongoing concern, the circuit court reversed the district court's release of the defendant on bail conditions because the $1 million bond, which was to be secured by properties owned by the defendant and his family, only deterred non-appearance, not danger. More specifically, the appellate court found that the district court's bail condition intended to address witness tampering

8

-- which was a general prohibition that the defendant was not to commit a crime or intimidate a witness -- "does not at all impede his ability to do so, and requires no more of him than that which the law already demands from [a defendant] and every other citizen."  Id. at 544 (quotation omitted).

Defendant's argument at the detention hearing that he was involved with 18th Street only as part of his Peace Ambassadorship, which required him to keep the peace in the community, cannot be squared by his own admissions in the complaint.  Defendant told officers that "after he got out of prison, he came out with 'juice'" -- meaning "a level of deep respect . . . earned through, typically violent, acts conducted in furtherance of the gang's priorities" and someone who "has power to control and direct gang-related activities" -- "due to the amount of time he served and the severity of his conviction."  (Compl. ¶ 19(d).)  According to defendant, "[a]lthough he did not want to be 'the guy,' he found the 18th Street gang was in disarray with a lack of command structure and was bestowed the power by other members to fix it."  (Id.)  Those admissions of leadership are corroborated by the jail calls where he talked about his violent orders and another gang member referred to him as the "homie" that "has the hood."  (Id. ¶ 11(b).)

Defendant's role and conduct in running 18th Street activities, coupled with his documented criminal history, make clear that defendant should be detained.

        4.    <u>Nature and Seriousness of the Danger Posed by Defendant's Release</u>

Defendant is not only a risk of danger to the community but has acted on his dangerousness time and again.

Defendant's proposed bail resource does not sufficiently address the risks of releasing him back into the community he has endangered. First, the $10,000 unsecured bail from defendant's single surety, who is unemployed, is woefully insufficient to mitigate defendant's danger to the community or his risk of non-appearance.  This is particularly true where: (1) defendant has committed multiple crimes either while in prison for murder at risk of serving up to life or on probation at risk of returning to prison; and (2) defendant has remained active in the 18th Street gang and committed the instant federal offense, which risked losing an almost $60,000 salary from the Healing Urban Barrios organization where he worked as a Peace Ambassador.  Second, defendant's proposed surety should give this Court no comfort because defendant has not shown that the surety is "solvent" or possesses the necessary assets to satisfy a substantial bond obligation.  See 18 U.S.C. §§ 3142(c)(1)(B)(xii), 3143(b)(1); Fed. R. Crim. P. 46(e).

Even if defendant were able to present additional bail resources, the proposed bail would not mitigate defendant's danger to the community in light of his serious, uninterrupted criminal history and the other allegations about his gang activities described in the complaint.  See United States v. Hir, 517 F.3d 1081, 1092 (9th Cir. 2008) (affirming district court's denial of proposed $600,000 secured bail package based on risk defendant posed to the community); see also Rep. No. 225, 98th Congress, 1st Sess. 1983, 1984 U.S.C.A.N. 3182, 3198-99 (n.60) (Congress finding that "a defendant who is a

10

danger to the community remains dangerous even if he has posted a substantial money bond").

The proposed restrictions for defendant's release -- including location monitoring -- would all suffer from the "critical flaw" in that "they depend on [defendant]'s good faith compliance" in order to be effective. Hir, 517 F.3d at 1092. In particular, even "electronic monitoring does not prevent a defendant from committing crimes within the monitoring radius," and "there is no reasonable way to assure that a defendant would not make impermissible stops or detours on his way to places permitted under the restrictions." Id. at 1092 n.11; see also Tortora, 922 F.2d at 886 (reversing release order finding that restrictions on communications with any person not approved by counsel, monitoring of phone through pen register, 24-hour house arrest, and other conditions had "an Achilles' heel" because "virtually all of them hinge on the defendant's good faith compliance").

Given defendant's uninterrupted commission of gang-motivated, violent, and/or weapon-related crimes, regardless of his supervision in custody -- under unquestionably greater restrictions than he seeks now -- or on probation -- with greater consequences than a violation of pretrial release -- this Court should be wary of defendant's ability or desire to obey the proposed restrictions. Because defendant's personal commitment to abide by release conditions is the key factor for determining his fitness for bail, see Hir, 517 F.3d at 1092, his serial and flagrant criminality counsels against bail in this case.

11

## III.  CONCLUSION

If the Court wants to know how defendant will conduct himself on pretrial release, it need look no further than his crimes while imprisoned for a serious murder and on probation since his release. He has been given every opportunity by the justice system to show that he can comply with the laws of society.  At every turn, he has proven he has neither the ability nor the desire to do so.  This Court should not grant defendant an umpteenth opportunity when community safety is at risk.  This Court should therefore detain defendant pending trial.

The undersigned, counsel of record for plaintiff, certifies that this brief contains 3,199 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 4, 2026                    Respectfully submitted,

                                       TODD BLANCHE
                                       Acting Attorney General

                                       BILAL A. ESSAYLI
                                       First Assistant United States
                                       Attorney

                                       JENNIFER L. WAIER
                                       Chief Assistant United States
                                       Attorney & Chief, Criminal Division


                                       _____/s/_____
                                       JENA A. MACCABE
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

13