GARY P. BURCHAM
BURCHAM & ZUGMAN
California State Bar No. 190780
402 West Broadway Suite 1130
San Diego, CA 92101
Telephone: (619) 699-5930
Email: garypburcham@gmail.com

Attorney for Michael Angel Alvarez

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.  2:26-mj-3156-DUTY |
| Plaintiff, ) | DEFENDANT'S BRIEF IN OPPOSITION TO GOVERNMENT'S |
| v. ) | APPLICATION FOR REVIEW/ RECONSIDERATION OF ORDER |
| MICHAEL ANGEL ALVAREZ, ) | SETTING CONDITIONS OF RELEASE |
| Defendant. ) | |

**INTRODUCTION**

Defendant, Michael Alvarez, hereby files the following brief in opposition to the government's brief in support of its application for review/reconsideration of the order of the magistrate judge setting conditions of release in this case.

**BACKGROUND**

On May 27, 2026, the government filed a one-count complaint charging Mr. Alvarez with possession of body armor by a violent felon, in violation of 18 U.S.C. § 931(a). At his initial appearance on June 1, 2026, the government moved for detention on the grounds of risk of flight and danger to the community. A detention hearing was held on June 3, 2026, and the Honorable Magistrate Judge Pedro V. Castillo denied the government's motion for detention, and set an unsecured bond in the amount of $10,000

secured by the signature of Mr. Alvarez's sister. The release order also contained a GPS monitoring requirement and a no-contact order for any person involved in gang activity. Magistrate Judge Castillo stayed the release order for two days after the government indicated it wanted to appeal the order. This Court has since granted an unopposed government motion to stay the magistrate judge's order pending resolution of the bond issue by this Court.

On June 4, 2026, the government filed an application for review/reconsideration of the release order in this case, along with a written brief in support of the application. On June 12, 2026, this Court set the matter for a hearing on June 17, 2026, at 2:00 p.m. Mr. Alvarez now files this brief in opposition to the government's brief in support of its application to revoke the order setting conditions of release and to detain Mr. Alvarez.

## ARGUMENT

### THIS COURT SHOULD DENY THE GOVERNMENT'S APPLICATION TO REVOKE THE MAGISTRATE JUDGE'S ORDER SETTING CONDITIONS OF RELEASE AND TO DETAIN MR. ALVAREZ

Almost fifty years ago, in *United States v. Salerno*, Chief Justice Rehnquist articulated the long standing ideal "[i]n our society[ is that] liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Congress codified this ideal in the Bail Reform Act, "guarantee[ing ]in a noncapital case the defendant will have the pretrial right to release on bail except in extreme and unusual circumstances." *Gavino v. MacMahon*, 499 F.2d 1191, 1195 (2d Cir. 1974) (per curiam). In other words, through the Bail Reform Act, Congress "mandate[d the] release of a person facing trial under the least restrictive condition or combination of conditions." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). It also requires courts to

"dispose of every alternative before ordering pretrial incarceration under the Bail Reform Act." *United States v. Fernandez-Alfonso*, 816 F.2d 477, 478 (9th Cir. 1987). This means that detention is appropriate only if, after considering every possible combination of conditions, the government proves that none can sufficiently mitigate (but not eliminate) the risk of nonappearance or danger. *See United States v. Orta*, 760 F.2d 887, 890-91 (8th Cir. 1985) ("The judicial officer must . . . consider whether one of the codified conditions or any combination of the conditions will 'reasonably assure' the defendant's appearance and the safety of the community. The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention.").

Mr. Alvarez respectfully requests that this Court deny the government's application to revoke the current order setting conditions of release and to instead detain Mr. Alvarez. Under Section 3142(g), the circumstances to be considered by the court include (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; and (3) the history and characteristics of the person, including the defendant's character; physical and mental condition; family ties; employment; financial resources; length of residence in the community; community ties; past conduct; history relating to drug or alcohol abuse; criminal history; record of appearance at court proceedings; whether at the time of the current offense or arrest the defendant was on probation, parole or other release pending trial, sentencing, appeal or completion of a sentence; and the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). The Government must show by a preponderance of the evidence that the defendant poses a non-appearance risk or must show by clear and convincing evidence that the defendant poses a danger to the community. 18 U.S.C. §3142(f)(2). "Any doubts regarding the propriety of pretrial release are to be resolved in favor of the defendant." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1198 (9th Cir.

2019).

A.          Nature and Circumstances of the Offense

The sole charge in this case is a violation of section 931(a) - possession of body armor by a violent felon.  This is not a presumption case given this charge.  As the government noted in its brief and as Mr. Alvarez stated during the detention hearing, the guidelines for this offense are relatively low.  Given Mr. Alvarez's criminal history (category III) and with a base offense level of ten for this charge, Mr. Alvarez currently faces an advisory guideline range of 10-16 months without acceptance of responsibility, and 6-12 months with a section 3E1.1 adjustment.

The government argues that detention on the grounds of flight and danger is supported by case law addressing section 931(a) charges, including a recent Ninth Circuit affirmation of a detention order in a case involving a section 931(a) charge, *see United States v. Romero*, CA9 no. 25-1738, as well as *United States v. Youngman*, no. 24-1369, 2025 U.S. App. LEXIS 13320 (8th Cir. June 2, 2025), and *United States v. Anderson*, 177 F. Supp. 3d 458, 465, 2016 U.S. Dist. LEXIS 51605, (D.D.C. 2016).  The facts of each of these cases are markedly different from what is present here and should not control this determination.

In *Romero,* defendant, a felon who was on active parole at the time, was arrested while carrying three firearms, wearing body armor on his person, and carrying a tent on his way to the woods.  *See* no. 25-1738 at ECF 9.  He was charged with being a felon-in-possession of a firearm as well as a section 931(a) violation, and was facing more than ten years in prison on the two charges.  *Youngman*, out of South Dakota, did not address a detention issue, but rather, a district court's decision not to reduce defendant's section 921(a) sentence pursuant to guidelines Amendment 821. That case involved defendant's arrest wearing stolen (from police) body armor after police responded to a report of an

assault involving guns. *SeeYoungman*, case no. 22CR50035-KES (D.D.S.) at ECF 32. The Eighth Circuit affirmed the denial of the reduction, finding that the district court properly considered defendant's history and characteristics (criminal history category V) which included a number of disciplinary problems including acts of violence in custody following sentencing, and the nature of the offense. *Youngman*, case no. 22CR50035-KES (D.S.D.) at ECF 65, 68. In *Anderson,* bond was denied after defendant was found wearing body armor after having been involved in a gunfight in a parking lot in front of a residential building. *Anderson*, 177 F. Supp. 3d at 465.

The facts relating to this offense have nothing in common with these three cases. In each of the above cases, the defendant was wearing body armor on his person, and engaging in an offense involving firearms while wearing the armor. Here, there were two body armor plates found in the trunk of Mr. Alvarez's parked car, and there was no vest to wear them. There were no guns connected to this alleged possession in any way, and Mr. Alvarez was fully complaint when officers approached him to search his vehicle. Mr. Alvarez is not attempting to minimize the significance of this charged offense by pointing out these facts and the guideline range for this offense, but the government's citations to these three disparate cases do nothing to show that Mr. Alvarez should be detained due the nature and characteristics of this offense. The only charge in this case is the single section 931(a) count, and this first section 3142(g) factor weighs in favor of setting bond.

**B.       Weight of the Evidence**

Mr. Alvarez has yet to receive any discovery in this case. The government points out in its brief evidence which supports the charge against Mr. Alvarez, [ECF 15 at 5], but the weight of the evidence is the least important section 3142(g) factor. *See United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) ("Our court has stated ... that the weight of the evidence is the least important of the various factors).

**C.**         **History and Characteristics of Mr. Alvarez**

Mr. Alvarez's history and characteristics also support the setting of bond in this case. He is 41 years of age, has extremely strong ties to the Los Angeles community, and his entire support system is in this city. Since his release in 2024, he has been working two jobs. He is a security guard with a company named Mondragon Security, and he also was employed as a Peace Ambassador with the Healing Urban Barrios organization. Between the two jobs, he often worked in excess of 60 hours per week. Mr. Alvarez also has a stable residence living with his cousin in Whittier. Mr. Alvarez has no drug or alcohol issues, and his mental and physical health is sound.

Mr. Alvarez's 2002 murder conviction obviously was an extremely serious offense and is a pertinent consideration in this detention analysis. [ECF 15 at 6]. Mr. Alvarez committed this offense when he was just 15 years of age, however, and served 24 years in custody for that offense. That offense conduct is now nearly 26 years old. Of note is the fact that Mr. Alvarez was released from custody from that offense with a two-year term of supervision, and he successfully completed that term. The government also raised in its brief a conviction that Mr. Alvarez suffered for possessing a weapon while in custody. [ECF 15 at 6]. Mr. Alvarez indeed possessed a weapon for his own protection while in county custody and he pled guilty to that offense. There were no violent acts connected to that possession, however, and he received only one day in custody for that case. Additionally, Mr. Alvarez's brief arrest while police were investigating a gambling machine establishment does not weigh in favor of detention. *Id.* Mr. Alvarez was never charged in that incident, and he denies ever having any involvement with the gambling machines which were at that location.

The government further argues that detention is warranted because of Mr. Alvarez's activities connected to the 18th Street gang. [ECF 15 at 7-8]. As explained at the

detention hearing, Mr. Alvarez did have had contact with members of that gang, as well as other persons in the community, but that was done as part of his job with Urban Barrios to maintain peace in the community. Mr. Alvarez's situation also is not akin to the organized crime cases cited by the government. *Id.* The government cites *United States v. Ferranti*, 66 F.3d 540, 543-44 (2d Cir. 1995), for the proposition that bond also should be denied because no bond condition could prevent or detect future illegal conduct by Mr. Alvarez. [ECF 15 at 8]. This is not the case. As Mr. Alvarez recommended at the detention hearing, and as Magistrate Judge Castillo ultimately adopted in his order setting conditions of release, a condition that precludes Mr. Alvarez from having any contact, either in person or through telephonic or electronic means, with any member or associate of a gang would prevent him from engaging in such conduct. While the government doubts the effectiveness of such a non-contact condition, these are commonly imposed conditions in bonds and the supervisory resources of U.S. Pretrial Services are in place to ensure compliance with this sort of condition.

**D.        Nature and Seriousness of Danger Posed by Release**

The government argues that a $10,000 unsecured bond signed by his sister is insufficient to mitigate the danger to the community or the risk of non-appearance. [ECF 15 at 10]. It is true that Mr. Alvarez's sister does not have her own job, but she does assist her husband with his tattoo business. While $10,000 might not be a lot of money to some people, it is to Mr. Alvarez's sister and this obligation is a very meaningful one to her, and therefore to Mr. Alvarez as well. If this Court believes that this dollar amount is not sufficient, or that more sureties should be on the bond to secure compliance, Mr. Alvarez proposed three sureties at the detention hearing (his sister, brother-in-law, and cousin), so he has multiple family members willing to step up for him.

This Court also should reject the government's claim that no particular

conditions for Mr. Alvarez's release would be sufficient because each condition relies on the "good faith compliance" of Mr. Alvarez to be effective. [ECF 15 at 11]. This sort of expectation of a defendant seeking release is present in virtually every case in which bond is set. Mr. Alvarez has made strong progress since his release two years ago to rebuild his life, and he has every reason to comply with all conditions of release this Court may set. Because, given the current record, the government cannot demonstrate by a preponderance of the evidence that Mr. Alvarez is a flight risk, nor can it demonstrate by clear and convincing evidence that he is a danger, bond in this case is appropriate.

## CONCLUSION

For the above reasons, Mr. Alvarez respectfully asks that this Court deny the government's request for review/reconsideration of the current order setting conditions of release and either confirm the bond set by Magistrate Judge Castillo, or set alternative conditions of release that this Court deems to be appropriate in this case.

DATED:     June 15, 2026

/s/  Gary P. Burcham
GARY P. BURCHAM
Counsel for Michael Alvarez